(80 South. 195)

No. 23314.

STATE v. OLIVA.

(Dec. 2, 1918.)

*(Syllabus by Editorial Staff.)*

1. CONSTITUTIONAL LAW ☞83(2)—INVOLUN-
   TARY SERVITUDE — VIOLATION OF CONTRACT
   FOR HIRE.

   Act No. 54 of 1906, § 1, making the willful
   violation of a contract for hire on faith of
   which money or goods have been advanced, with-
   out tendering the money or value of goods, a
   misdemeanor, contravenes Const. U. S. Amend.
   13, forbidding involuntary servitude, in view of
   Rev. St. U. S. § 1990 (U. S. Comp. St. 1916, §
   3944), abolishing and prohibiting peonage.

2. CONSTITUTIONAL LAW ☞83(2)—INVOLUN-
   TARY SERVITUDE—"PEONAGE."

   "Peonage" is a status or condition of com-
   pulsory service based on the peon's indebtedness
   to master, it being immaterial that service was
   begun voluntarily by contract, as, if it is en-
   forceable by criminal prosecution, instead of
   civil action for damages, it is peonage.

   [Ed. Note.—For other definitions, see Words
   and Phrases, First and Second Series, Peonage.]

Appeal from Seventeenth Judicial District
Court, Parish of Vermilion; W. W. Bailey,
Judge.

Israel Oliva was indicted for violating a
contract of hire, the indictment was quash-
ed, and the State appeals. Affirmed.

A. V. Coco, Atty. Gen., and Preston J.
Greene, Dist. Atty., of Abbeville (Harry P.
Sneed, of New Orleans, of counsel), for the
State.

Weeks & Weeks, of New Iberia, for appel-
lee.

LECHE, J. Defendant was indicted for
violating a contract of hire, and, the indict-
ment having been quashed on the ground
that the statute denouncing that offense is
unconstitutional, the state has taken the
present appeal.

Section 1 of Act No. 54, p. 87, of 1906, un-
der which the defendant is being prosecuted,
reads as follows:

"Whoever shall willfully violate a hire
* * * contract, conditioned on the cultiva-
tion of land in this state, upon the faith of which
contract money or goods have been advanced,
by leaving the employ of the person * * *
without first tendering to the person by whom
said money or goods was advanced, the amount
of money, or the value of goods obtained; shall
be guilty of a misdemeanor," etc.

[1, 2] Defendant moved to quash the in-
dictment on the ground that it is founded
upon a provision of Act No. 54 of 1906, which
contravenes the Thirteenth Amendment to
the Constitution of the United States, in that
it attempts to establish involuntary servi-
tude in this state and to enforce the per-
formance of personal services in order to
satisfy a debt.

The Thirteenth Amendment to the Consti-
tution of the United States, after declaring
that neither slavery nor involuntary servi-
tude, except as a punishment for crime
whereof the party shall have been duly con-
victed, shall exist within the United States,
ordains that Congress shall have power to
enforce this article by appropriate legisla-
tion. Pursuant to the power thus specially
delegated to it, Congress adopted section
1990 of the Revised Statutes (U. S. Comp.
St. 1916, § 3944), which, in so far as it af-
fects state legislation, is equal in authority
to the amendment itself, and which reads as
follows:

"The holding of any person to service or labor
under the system known as peonage is abolished
and forever prohibited," etc.

"Peonage" has been defined by the Su-
preme Court of the United States as a sta-
tus or condition of compulsory service, based
upon the indebtedness of the peon to the
master. The basal fact is indebtedness, and
indebtedness is the cord by which the victim
is bound to the master's service. It matters
not that the service was begun voluntarily
by contract, for, if it is enforceable by crim-

inal prosecution instead of a civil action for damages, it is nevertheless peonage. See Bailey v. Alabama, 219 U. S. 219, 31 Sup. Ct. 145, 55 L. Ed. 191, and the authorities therein cited.

An analysis of the law as hereinabove quoted and under which the defendant is being prosecuted shows at a glance that it comes within the inhibition of the ·Thirteenth Amendment and the legislation adopted by Congress in pursuance thereof, as interpreted by the United States Supreme Court. It does not pretend to enforce a contract of hire except where money or goods have been advanced on the faith of the contract, and then only in the instance where the laborer leaves without first tendering the return of the money or the value of the goods. This indebtedness becomes the cord by which the laborer is bound to the master's service, and the service is enforceable by most potent means, the instrumentalities created by the state to punish lawlessness and crime.

Our attention has been called by the Attorney General to the case of State v. Murray, 116 La. 655, 40 South. 930, 7 Ann. Cas. 957, decided by this court in 1906, but whatever may have been said in that case in conflict with our present ruling is overruled.

The judgment appealed from is affirmed.